# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **ROBERT C. MCGHEE,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00060 |
| | ) | **MEMORANDUM OPINION** |
| **JO ANNE B. BARNHART**, | ) | |
| **Commissioner of Social Security,** | ) | By: Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the ALJ for further consideration in accordance with this opinion and accompanying order.

## I. Background and Standard of Review

Plaintiff, Robert C. McGhee, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that McGhee filed his application for DIB on or about February 11, 2003, alleging disability as of September 21, 2002, based on bipolar disorder, depression and psychotic episodes. (Record, ("R."), at 43-45, 49.) The claim was denied initially and upon reconsideration. (R. at 26-28, 31.) McGhee then requested a hearing before an administrative law judge, ("ALJ"). (R. at 36.) The ALJ held a hearing on March 22, 2004, at which McGhee was represented.[1] (R. at 181-97.)

By decision dated March 26, 2004, the ALJ denied McGhee's claim. (R. at 12-17.) The ALJ found that McGhee met the disability insured status requirements of the Act through the date of the decision. (R. at 16.) The ALJ found that McGhee had not engaged in substantial gainful activity since September 21, 2002. (R. at 16.) The ALJ also found that the medical evidence established that McGhee suffered from a severe impairment, namely alcohol and drug abuse, which met the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.09. (R. at 16.) The ALJ further found that absent alcohol and drug abuse, McGhee did not suffer from a severe mental or physical impairment. (R. at 16.) Thus, the ALJ found that alcohol and drug abuse were material

---

[1]McGhee was represented by Eric Reese, a paralegal with the law firm of Browning, Lamie & Gifford. (R. at 181.)

to disability. (R. at 16.) The ALJ found that McGhee's allegations of disabling pain and other symptoms were not totally credible. (R. at 16.) The ALJ found that McGhee retained the residual functional capacity to perform work at all exertional levels. (R. at 15.) Thus, the ALJ found that McGhee was not disabled under the Act and was not eligible for DIB benefits. (R. at 16-17.) *See* 20 C.F.R. § 404.1520(c) (2004).

After the ALJ issued his decision, McGhee pursued his administrative appeals, (R. at 7), but the Appeals Council denied his request for review. (R. at 4-6.) McGhee then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2004). The case is before this court on the Commissioner's motion for summary judgment filed December 23, 2004.

## II. Facts

McGhee was born in 1968, (R. at 43, 186), which classifies him as a "younger person" under 20 C.F.R. § 404.1563(c). McGhee has a tenth-grade education and past work experience as a machine operator, a laborer, a carpet salesman and a carpet installer. (R. at 55, 68,187.)

McGhee testified at his hearing that he suffered from bipolar disorder and back pain. (R. at 187.) He testified that he was paranoid and that he had a difficult time dealing with people. (R. at 188.) McGhee testified that he could stand for less than one hour without interruption. (R. at 189.) He also testified that prolonged sitting caused back pain. (R. at 189.) He stated that he could walk for 15 minutes without

interruption. (R. at 189.) McGhee also claimed that his emotional and physical problems affected his ability to concentrate and stay focused. (R. at 191.) McGhee testified that he experienced crying spells. (R. at 191.) McGhee stated that he received counseling monthly. (R. at 192.) He stated that he had low back pain and leg pain, as well as numbness in his arms and hands. (R. at 188.) McGhee stated that he had problems with alcohol and other substances in the past. (R. at 188.) However, he stated that he last consumed alcohol on January 17, 2003. (R. at 189.)

Norman Hankins, a vocational expert, also was present and testified at McGhee's hearing. (R. at 193-97.) Hankins classified McGhee's past work as a machine operator, a carpet layer and a construction worker as heavy,[2] with the jobs as a machine operator and a carpet layer also being semi-skilled. (R. at 195.) He classified McGhee's past work as a carpet salesman as light[3] and unskilled. (R. at 195.) Hankins was asked to consider a hypothetical individual of McGhee's age, education and past relevant work who had the nonexertional limitations as set out in the assessment completed by Robert S. Spangler, Ed.D., dated February 23, 2004. (R. at 172-74, 195.) Hankins stated that there would be no jobs available that such an individual could perform. (R. at 196.) Hankins was then asked to consider the same individual, but who was limited as set out in the assessment completed by Sharon J. Hughson, Ph.D., on December 4, 2003. (R. at 61-63, 196.) Hankins stated that there

---

[2]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can perform heavy work, he also can perform medium, light and sedentary work. *See* 20 C.F.R. § 404.1567(d) (2004).

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 20 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2004).

-4-

would be no jobs available that such an individual could perform. (R. at 196.)  Hankins also stated that there would be no jobs available that an individual could perform if McGhee's testimony were found to be credible. (R. at 197.)

In rendering his decision, the ALJ reviewed records from Dr. Linda R. Thompson, M.D.; Wellmont Bristol Regional Medical Center; Community Counseling Services; Amy Blevins, F.N.P.C., a family nurse practitioner; Sharon J. Hughson, Ph.D., a licenced clinical psychologist; Robert S. Spangler, Ed.D., a licenced psychologist; Appalachian Psychological Consultants; R. J. Milan Jr., Ph.D., a state agency psychologist;  Dr. Michael J. Hartman, M.D., a state agency physician; Troutdale Medical Center; Smyth County Community Hospital; and Virginia Public Schools.

In his brief, McGhee argues that the ALJ erred by failing to find that he suffered from a severe mental impairment, in determining his residual functional capacity and in not having a psychological expert testify at the hearing. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiffs Brief"), at 13-20.)

The record shows that on March 11, 2002, McGhee was admitted at Wellmont Bristol Regional Medical Center for evaluation and treatment of alcohol and substance abuse, depression and suicidality. (R. at 96-103.)  The record reveals that McGhee had just gotten out of jail after totaling his vehicle while driving under the influence.  (R. at 96.)  A urine screen was positive for amphetamines, benzodiazepines and cannabis. (R. at 96.)   He admitted to cocaine, amphetamine, marijuana, Xanax and pain medication usage.  (R. at 101.)  At the time of the hospitalization, McGhee reported

-5-

drinking two to three times per week to the point of blacking out. (R. at 100.) He stated that he his driver's license had recently been reinstated after prior driving under the influence charges. (R. at 100.) McGhee reported no previous substance abuse treatment. (R. at 100.) He was admitted to Ridgeview Pavilion under a temporary detention order under suicide, AWOL and detoxification precautions. (R. at 97.) His diagnoses on admission included alcohol abuse and dependence, continuous, severe, requiring detoxification, polysubstance abuse, episodic, continuous, major depressive disorder, recurrent, moderately severe without psychosis and dysthymic disorder, early onset, chronic. (R. at 102.) His then-current Global Assessment of Functioning, ("GAF"), score was placed at 30 to 35.[4] (R. at 103.) McGhee was placed on Ativan, Effexor, Desyrel and Neurontin. (R. at 97.) During his hospitalization, McGhee learned that he likely had hepatitis C. (R. at 97.) McGhee was discharged on March 22, 2002. (R. at 96-99.) At that time, Dr. Linda R. Thompson, M.D., diagnosed him with bipolar II disorder, current episode mixed, hypomanic and depressive, severe, without psychosis, alcohol abuse and dependence, continuous, severe, requiring detoxification, polysubstance abuse, episodic, continuous, and a then-current GAF score of 50-55.[5] (R. at. 98-99.) McGhee was prescribed Effexor, Desyrel and

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 21 to 30 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment ... OR inability to function in almost all areas." DSM-IV at 32. A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood...." DSM-IV at 32.

[5]A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32. A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

Neurontin and was advised to follow up with Mount Rogers Mental Health Center, ("Mount Rogers"), for treatment of his bipolar disorder and substance abuse. (R. at 99.) Dr. Thompson also recommended psychiatric medication management. (R. at 99.)

McGhee received treatment at Mount Rogers from May 16, 2002, through April 29, 2003, for bipolar disorder. (R. at 104-22.) On May 22, 2002, Janan Hurst, a licensed clinical social worker, noted that McGhee was cooperative and fully oriented. (R. at 120.) However, she noted that he had poor judgment and a depressed and anxious affect. (R. at 120.) Hurst further noted that McGhee experienced sleep disturbance, decreased concentration, psychosis and hyperenergy. (R. at 120.) On May 31, 2002, McGhee was diagnosed with bipolar disorder II, mixed, alcohol dependence and then-current GAF of 65.[6] (R. at 118.) In September 2002, Hurst noted no change in McGhee's condition. (R. at 122.)

McGhee was again hospitalized at Ridgeview Pavilion from September 21, 2002, through October 2, 2002, at the referral of Mount Rogers for continuing spells of depression, psychotic symptoms and thoughts of suicide. (R. at 123-28.) McGhee reported intermittent alcohol abuse, but stated that he was not drinking as much as he did at the time of his prior admission. (R. at 125.) On the day of his admission, McGhee had been drinking and had taken a Lortab for back pain. (R. at 125.) He presented to the emergency room with complaints of voices telling him to kill himself.

---

[6] A GAF of 61-70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but [is] generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

(R. at 125.) McGhee tested positive for opiates and his alcohol level was .146. (R. at 125.) He requested rehospitalization to get restabilized on his medication. (R. at 125.) Dr. Thompson reported that McGhee was fully oriented, but appeared severely depressed and moderately severely anxious. (R. at 127.) He exhibited a blunted affect and his thought processes were somewhat impaired. (R. at 127.) McGhee reported ongoing auditory and visual hallucinations. (R. at 127.) He further reported ongoing active and passive suicidal ideation with a plan to hang himself. (R. at 127.) However, McGhee denied any homicidal ideation. (R. at 127.) Dr. Thompson noted that McGhee's memory was intact and he was motivated for treatment. (R. at 127.) At admission, he was diagnosed with bipolar disorder II, current episode depressed, severe with psychotic features, alcohol abuse and dependence, continuous, episodic, possibly requiring detoxification, polysubstance abuse, episodic, and a then-current GAF of 25-30. (R. at 127.) Upon admission, McGhee was placed on suicide precautions and detoxification precautions. (R. at 128.) McGhee's dosages of Effexor and Neurontin were increased, and he was prescribed Risperdal. (R. at 128.) Dr. Thompson noted that McGhee would participate in both individual and group therapy during his hospitalization. (R. at 128.) McGhee was discharged on October 2, 2002, with instructions to continue therapy at Mount Rogers. (R. at 124.) Dr. Ashvin A. Patel, M.D., noted that McGhee continued to experience auditory hallucinations. (R. at 124.) His dosages of Effexor and Neurontin were again increased, and he was prescribed Seroquel. (R. at 124.) Dr. Patel strongly encouraged McGhee to abstain from alcohol. (R. at 124.) McGhee was diagnosed with bipolar disorder, depressed with psychosis, a history of polysubstance abuse, episodic, and alcohol abuse and dependence. (R. at 123.)

-8-

On October 31, 2002, McGhee saw Amy Blevins, a family nurse practitioner at Smyth Mental Health Clinic. (R. at 114-15.)   At that time, McGhee had been incarcerated at Smyth County Jail since October 15, 2002, on two driving under the influence charges. (R. at 114.)   He reported doing "fairly well" on his medication regimen despite not receiving Effexor and Seroquel while incarcerated.  (R. at 114.) He reported an improvement in his depressive symptoms and subsided racing thoughts. (R. at 114.)   McGhee reported minimal auditory and visual hallucinations. (R. at 114.)  He denied any suicidal or homicidal ideations. (R. at 114.)  Blevins noted that McGhee was fully oriented, and was responsive, coherent and relevant.  (R. at 114.)   She described his mood as stable and his affect as appropriate. (R. at 114.) Blevins further reported that McGhee's thought content was appropriate, he exhibited no overt psychosis and his cognitive functioning was intact. (R. at 114.)   However, Blevins rated his judgment and insight as poor. (R. at 114.)   McGhee reported consuming 12 to  24 beers every two days. (R. at 115.)  Although McGhee admitted to a history of drug use, he stated that he had taken no drugs for nine months. (R. at 115.)  Blevins diagnosed McGhee with bipolar disorder II, mixed, alcohol dependence and nicotine dependence.  (R. at 115.)  He was given samples of Effexor and Seroquel and was continued on Trazadone and Neurontin. (R. at 115.)   McGhee was encouraged to seek substance abuse counseling upon release from jail. (R. at 115.)

On February 18, 2003, McGhee reported that he was released from jail the previous month, but had not been financially able to obtain his medications. (R. at 109.)   He noted feeling increasingly anxious, experiencing increased appetite and decreased sleep and being very agitated and irritable. (R. at 109.)  However, McGhee reported a good energy level, noting that he enjoyed visits with his children. (R. at

-9-

109.) McGhee reported some auditory and visual hallucinations, but denied suicidal or homicidal ideations. (R. at 109.) He admitted to one episode of drinking since his release from jail and, despite having been referred to an intensive outpatient program, he had not participated for lack of transportation. (R. at 109.) Blevins reported that McGhee was fully oriented, responsive, coherent and relevant. (R. at 109.) His mood and affect were "somewhat anxious." (R. at 109.) McGhee exhibited appropriate thought content and no overt psychosis. (R. at 109.) Blevins noted that McGhee's cognitive functioning was intact and his judgment and insight were fair. (R. at 109.) His diagnoses remained unchanged. (R. at 109.) His medications were discontinued, and he was prescribed Paxil CR, Trileptal, Abilify and Elavil. (R. at 110.) McGhee was again encouraged to consider attending the intensive outpatient program. (R. at 110.)

On April 1, 2003, Hurst noted that McGhee was cooperative and fully oriented with an appropriate, but anxious, affect. (R. at 106.) McGhee reported feeling "much better," noting fewer mood swings. (R. at 106.) Hurst reported "moderate" progress. (R. at 106.) On April 29, 2003, McGhee's dosage of Trileptal was increased. (R. at 105.)

On April 15, 2003, R.J. Milan Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), concluding that McGhee suffered from an affective disorder, namely bipolar disorder II. (R. at 129-43.) Milan also found that McGhee's regular use of substances affecting the central nervous system resulted in behavioral changes or physical changes. (R. at 137.) Milan found that McGhee was mildly restricted in his activities of daily living, experienced moderate

-10-

difficulties in maintaining social functioning, experienced moderate difficulties in maintaining concentration, persistence or pace and had experienced one or two episodes of decompensation. (R. at 139.) Milan's findings were affirmed by Eugenie Hamilton, Ph.D., another state agency psychologist, on June 25, 2003. (R. at 129.)

Milan also completed a Mental Residual Functional Capacity Assessment, concluding that McGhee was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and to interact appropriately with the general public. (R. at 144-45.) In all other areas, McGhee was found either to be not significantly limited or Milan noted that there was no evidence of limitation. (R. at 144-45.) Milan found that McGhee retained the mental abilities to understand and perform simple work under ordinary supervision with no more than occasional problems concentrating, persisting or relating to others. (R. at 146.) Milan's findings were again affirmed by state agency psychologist Hamilton. (R. at 146.)

On October 23, 2003, McGhee underwent a psychological evaluation by Sharon J. Hughson, Ph.D., a licenced psychologist, at the request of Disability Determination Services. (R. at 155-60.) Hughson noted that McGhee was unreliable in his reporting. (R. at 155.) He admitted to drug and alcohol use in the past. (R. at 155.) McGhee reported having received no substance abuse treatment. (R. at 155.) He reported being paranoid all of his life, and he reported suicidal ideations, specifically, a plan to hang himself. (R. at 156.) However, he stated that thoughts of his children prevented him from acting on these thoughts. (R. at 156.) McGhee reported that medication

-11-

helped him "a little," but noted that he heard voices telling him to kill himself. (R. at 156.) He further reported seeing shadows running across the floor, which Hughson opined could be related to his alcohol abuse. (R. at 156.) McGhee reported that his mind raced. (R. at 156.) At the time of the evaluation, McGhee was taking Wellbutrin, amitriptyline and a sleep medication. (R. at 156.) However, he was receiving no counseling at that time. (R. at 156.)

Hughson noted that McGhee had a fair general fund of information and was fully oriented. (R. at 157.) Although McGhee denied using alcohol at the time of the evaluation, Hughson noted that she "smelled a very slight whiff of alcohol," which she opined could have been aftershave. (R. at 158.) McGhee reported difficulty getting along with others at work. (R. at 158.) He reported not driving because he lost his license as a result of driving under the influence charges. (R. at 158.) McGhee reported caring for himself, managing his money, watching televison, listening to the radio, performing yardwork, cooking, performing housework, visiting others and receiving visits, attending church twice per month, walking, playing with his children and riding a four-wheeler. (R. at 158.)

Hughson noted that McGhee was well-motivated and alert throughout the evaluation. (R. at 158.) She rated McGhee's reading and writing skills as normal. (R. at 158.) Hughson administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test, and McGhee obtained a verbal IQ score of 72, a performance IQ score of 68 and a full-scale IQ score of 67, placing him in the mild mental retardation range of intellectual functioning. (R. at 158-59.) Hughson also administered the Minnesota Multiphasic Personality Inventory-Second Edition, ("MMPI-2"), test. (R.

-12-

159.)  However, she opined that McGhee answered the questions in such a manner as to invalidate the results. (R. at 159.)  Finally, Hughson administered the Miller Forensic Assessment of Symptoms Test, ("MFAST"), which indicated malingering. (R. at 159.)

Hughson diagnosed McGhee with polysubstance dependence in full sustained remission per patient report, bipolar disorder I, most recent episode manic per patient report, malingering and mild mental retardation, which Hughson opined could be a low estimate. (R. at 159.)  Hughson concluded that McGhee was capable of following work rules, but complex job instructions would be difficult for him. (R. at 160.)  She found that McGhee would have difficulty relating to co-workers, the public and supervisors, and she noted that work stresses would exacerbate his symptoms. (R. at 160.)  Hughson opined that McGhee could function independently, as he had done so in the past. (R. at 160.)  She found that McGhee's attention and concentration were within normal limits. (R. at 160.)  Hughson opined that McGhee was not emotionally stable, predictable or reliable. (R. at 160.)  Hughson noted that it was difficult to determine how much of McGhee's problems were a result of past substance abuse and how much was related to his bipolar disorder. (R. at 160.)  She opined that McGhee might have learning disorders, which would account for the invalid MMPI-2 results. (R. at 160.)  Hughson found McGhee incapable of managing his own funds due to his addictions. (R. at 160.)

Hughson also completed a Mental Assessment of Ability To Do Work-Related Activities. (R. at 161-63.)  She concluded that McGhee had an unlimited ability to follow work rules, to function independently and to maintain attention and concentration. (R. at 161-62.)  Hughson further concluded that McGhee had a good

ability to understand, remember and carry out simple job instructions, a fair ability to understand, remember and carry out detailed job instructions and to maintain personal appearance and a poor ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex job instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 162.)

McGhee saw Robert S. Spangler, Ed. D., a licenced psychologist, on February 23, 2004, for a psychological evaluation at his attorney's request. (R. at 167-71.) Spangler described McGhee as "socially confident but depressed." (R. at 167.) He further noted erratic concentration due to bipolar disorder. (R. at 167.) McGhee reported hearing voices and seeing things "moving." (R. at 168.) He further reported seeing a psychiatrist monthly and taking Zyprexa, Wellbutrin, Cyclobenzaprine and Lortab. (R. at 168.) McGhee stated that he was attending classes to receive his general equivalency development, ("GED"), diploma, but had difficulty concentrating due to his mind racing. (R. at 168.) Spangler noted that McGhee was alert and fully oriented. (R. at 168.) He noted that McGhee appeared to have low average to average intelligence and was emotionally labile. (R. at 169.) McGhee denied then-current suicidal or homicidal ideation, but noted becoming easily angered. (R. at 169.) McGhee reported weekly crying spells and going for weeks with only an hour or two of sleep. (R. at 169.)

McGhee reported washing dishes, making his bed, picking up after himself, walking, occasionally grocery shopping with a friend, watching television and taking

-14-

his children to the park. (R. at 169.) McGhee reported more bad days than good days. (R. at 169.) Spangler rated McGhee's social skills as adequate, noting that he related well to him. (R. at 169.) Spangler noted that McGhee was not able to handle his financial affairs due to his bipolar disorder, emotional lability and history of alcohol and polysubstance abuse. (R. at 169.)

Spangler administered the MFAST, which indicated that McGhee was not malingering. (R. at 170.) Spangler diagnosed McGhee with bipolar disorder, currently depressed with auditory and visual hallucinations, polysubstance abuse in full remission, alcohol abuse in full remission, low average to average intelligence, erratic concentration, moderate, often and a GAF score of 50. (R. at 170.)

Spangler also completed a Mental Assessment Of Ability To Do Work-Related Activities. (R. at 172-74.) Spangler concluded that McGhee had a good ability to follow work rules, between a fair and good ability to understand, remember and carry out detailed and simple job instructions, a fair ability to relate to co-workers, to use judgment, to interact with supervisors, to function independently, to maintain attention and concentration, to behave in an emotionally stable manner and to relate predictably in social situations and a poor or no ability to deal with the public, to deal with work stresses, to understand, remember and to carry out complex job instructions and to demonstrate reliability. (R. at 172-73.)

III.  Analysis

-15-

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2004). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2004).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 26, 2004, the ALJ denied McGhee's claim. (R. at 12-17.) The ALJ found that McGhee met the disability insured status requirements of the Act through the date of the decision. (R. at 16.) The ALJ found that McGhee had not engaged in substantial gainful activity since September 21, 2002. (R. at 16.) The ALJ

-16-

also found that the medical evidence established that McGhee suffered from a severe impairment, namely alcohol and drug abuse. (R. at 16.) The ALJ further found that absent alcohol and drug abuse, McGhee did not suffer from a severe mental or physical impairment. (R. at 16.) The ALJ found that McGhee's allegations were not credible. (R. at 16.) Thus, the ALJ found that McGhee was not disabled under the Act and was not eligible for DIB benefits. (R. at 16-17.) *See* 20 C.F.R. § 404.1520(c) (2004).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

McGhee first argues that the ALJ erred in failing to find that he suffered from a severe mental impairment and, thus, also erred in his finding of residual functional capacity. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 13-20.) McGhee further argues that the ALJ erred by rejecting the opinions of psychologists Hughson and Spangler and, therefore, in substituting his own opinion for that of a trained professional. (Plaintiff's Brief at 13, 20.)

-17-

In 1996, Congress amended the Social Security Act to provide that "an individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(c) (West 2004). These amendments specified that they were to "apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security ... on or after the date of the enactment of this Act." Pub. L. No. 104-121, § 105(a)(5)(A) (amending 42 U.S.C. § 405 notes, pertaining to DIB), 110 Stat. 847, 853-54. Moreover, 20 C.F.R. § 404.1535(a) states as follows: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."

Thus, under the Commissioner's regulations, an ALJ must first conduct the five-step disability inquiry without considering the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits, and there would be no need to proceed with the analysis under 20 C.F.R. § 404.1535. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed under § 404.1535 to determine whether the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." 20 C.F.R. § 404.1535 (2004); *see Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). In other words, if, and only if, an ALJ finds a claimant disabled under the five-step disability

inquiry, should the ALJ evaluate whether the claimant would still be disabled if he or she stopped using drugs or alcohol. *See Bustamante*, 262 F.3d at 955.

Here, the ALJ did not first find McGhee disabled under the five-step disability analysis before evaluating the impact of his alcoholism on that disability. Instead, the ALJ erroneously combined the alcoholism analysis under 20 C.F.R. § 404.1535 with the disability analysis when he found that McGhee's only severe impairments were alcohol and drug abuse and then proceeded to evaluate the impact of McGhee's alcoholism within the five-step analysis. (R. at 14-17.)

McGhee argues that the ALJ erred by finding that he did not suffer from a severe mental impairment. I agree. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2004). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2004). The Fourth Circuit held in *Evans v. Heckler*, that ""[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations

-19-

omitted) (emphasis added).

In this case, the undisputed evidence shows that McGhee suffered from a severe mental impairment. Every examining and nonexamining psychological source diagnosed McGhee with bipolar disorder. For instance, in March 2001, when McGhee was discharged from Ridgeview Pavilion for the first time, he was diagnosed with bipolar disorder and was advised to follow up for treatment. (R. at 98-99.) Thereafter, McGhee received treatment for bipolar disorder at Mount Rogers from May 2002 through April 2003. (R. at 104-22.) On May 31, 2002, a licensed clinical social worker at Mount Rogers again diagnosed McGhee with bipolar disorder. (R. at 118.) McGhee was again hospitalized at Ridgeview Pavilion on September 21, 2002, through October 2, 2002. (R. at 123-28.) On admission, he was diagnosed with bipolar disorder. (R. at 127.) He participated in both individual and group therapy while hospitalized and was advised to continue therapy after being discharged. (R. at 128.) At his discharge on October 2, 2002, McGhee was again diagnosed with bipolar disorder. (R. at 123.) On October 31, 2002, Amy Blevins, a family nurse practitioner at Smyth County Mental Health, diagnosed him with bipolar disorder. (R. at 115.) In February 2003, his diagnosis remained unchanged. (R. at 109.) In April 2003, state agency psychologist Milan concluded that McGhee suffered from bipolar disorder and placed restrictions on him based thereon. (R. at 132, 139, 144-45.) In October 2003, psychologist Hughson diagnosed McGhee with bipolar disorder and placed restrictions on his work-related mental abilities. (R. at 159, 161-62.) Finally, in February 2004, psychologist Spangler also diagnosed McGhee with bipolar disorder and placed restrictions on him as a result thereof. (R. at 170, 172-73.)

-20-

Based on the foregoing reasons, I find that substantial evidence does not support the ALJ's finding that McGhee does not suffer from a severe mental impairment, namely bipolar disorder. While I do not doubt that upon remand the evidence will support a finding that there was some period of time during which alcohol was material to McGhee's mental disability, there also is evidence contained in the record that McGhee stopped drinking after January 17, 2003.[7] However, McGhee continued to be diagnosed with bipolar disorder and restrictions were placed on his work-related mental abilities as a result of his bipolar disorder after January 17, 2003.

Finally, I note that there is some evidence that McGhee was receiving unemployment benefits on February 18, 2003. (R. at 109.) It is unknown for how long McGhee received such benefits. However, the ALJ correctly noted in his decision that McGhee would not be eligible for disability benefits during any time that he was, in fact, receiving unemployment benefits because, in order to receive such benefits, an individual must hold himself out as willing and *able* to work. *See* VA. CODE ANN. § 60.2-612(b)(7) (Michie 2001 Repl. Vol. & Supp. 2004). Holding oneself out as able to work is in direct contravention to a disability claim. Thus, on remand, the ALJ must determine precisely when McGhee received unemployment benefits and take that into consideration if disability benefits are awarded.

---

[7]McGhee testified at his hearing and informed Blevins that he stopped drinking after January 17, 2003. (R. at 109, 189.) There is no evidence to the contrary contained in the record on appeal.

Given this disposition, I find it unnecessary to address McGhee's remaining arguments.

*IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and the case will be remanded to the ALJ for further consideration in accordance with this opinion and accompanying order.

An appropriate order will be entered.

DATED:     This 28th day of April, 2005.

/s/  Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE